No. 23-1719
# IN THE UNITED STATES COURT OF APPEALS

## FOR THE EIGHTH CIRCUIT

———————————————————————————

STATE OF MISSOURI,
*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al.
*Respondents*.

———————————————————————————

THE STATE OF MISSOURI'S MOTION TO STAY THE FINAL RULE
OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY

———————————————————————————

**ANDREW T. BAILEY**
ATTORNEY GENERAL
Joshua M. Divine, #69875
*Solicitor General*
Samuel C. Freedlund, #73707
*Assistant Attorney General*
*Attorneys for Petitioners*

Office of the Attorney General
815 Olive St.
Suite 200
St. Louis, Missouri 63101
Phone: (314) 340-4869
Fax (573) 751-1774
Samuel.Freedlund@ago.mo.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................. 1

STATEMENT OF THE CASE ............................................................. 3

I.   The Clean Air Act and the Interstate Transport System. ............... 3

    A.   Congress Establishes a System of Cooperative
        Federalism .......................................................................... 3

    B.   The Interstate Transport System and 2015 Ozone
        NAAQS. ............................................................................ 5

II.  EPA Rejects Missouri's SIP. .......................................................... 6

    A.   EPA Issues Guidance and Comments on Missouri's
        Initial SIP. ......................................................................... 6

    B.   Missouri's SIP and Supplement ......................................... 9

    C.   EPA Rejects Missouri's SIP and Ignores Missouri's
        SIP Supplement. .............................................................. 10

ARGUMENT ...................................................................................... 13

I.   Missouri is Likely to Prevail on the Merits. ................................. 13

    A.   EPA Exceeded its Authority and Acted Arbitrarily
        and Capriciously in Denying Missouri's SIP. ...................... 14

    B.   EPA's Refusal to Consider Missouri's SIP
        Supplement was Arbitrary and Capricious. ......................... 20

II.  Missouri will Suffer Irreparable Injury Absent a Stay. ................. 22

i

A.   EPA's Final Rule Impermissibly Harms Missouri's Sovereign Interests Under the CAA's Cooperative Federalism Framework.........................................................22

B.   EPA's Final Rule Causes Immediate, Irreparable Harm to Missouri's Energy Grid. .........................................23

III.   The Balance of Equities and Public Interest Favor a Stay............25

CONCLUSION .........................................................................27

CERTIFICATE OF SERVICE.................................................28

CERTIFICATE OF COMPLIANCE......................................29

Appellate Case: 23-1719   Page: 3   Date Filed: 04/13/2023 Entry ID: 5265153

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Abbott v. Perez,*
138 S. Ct. 2305 (2008)...........................................................23

*Baker Elec. Co-op., Inc. v. Chaske,*
28 F.3d 1466 (8th Cir. 1994)..................................................25

*Chemical Mfrs. Ass'n* v. E.P.A.
28 F.3d 1259 (D.C. Cir. 1994).................................................20

*Delaware Dept. of Natural Resources v. E.P.A.,*
785 F.3d 1 (D.C. Cir. 2015).....................................................16

*Dominion Transmission, Inc. v. Summers,*
723 F.3d 238 (D.C. Cir. 2013)............................................6, 22

*E.P.A. v. EME Homer City Generation, L.P.,*
572 U.S. 489 (2014)...............................................................16

*EME Homer City Generation, L.P. v. E.P.A.*
696 F.3d 7 (D.C. Cir. 2012)....................................................22

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211 (2016)...............................................................15

*Food and Drug Admin. v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000)...............................................................18

*Friends of Boundary Waters Wilderness v. Bosworth,*
437 F.3d 815 (8th Cir. 2006)..................................................14

*Hill v. Xyquad, Inc.,*
939 F.2d 627 (8th Cir. 1991)..................................................25

*Iowa Utls. Bd. v. FCC,*
109 F.3d 418 (8th Cir. 1996)........................................25, 26, 27

*Kansas v. United States,*
249 F.3d 1213 (10th Cir. 2001)...............................................23

Appellate Case: 23-1719     Page: 4     Date Filed: 04/13/2023 Entry ID: 5265153

*Kiowa India Tribe of Oklahoma v. Hoover,*
  150 F.3d 1163 (10th Cir. 1998) ........................................................... 23

*Michigan v. E.P.A.,*
  213 F.3d 663 (D.C. Cir. 2000) ............................................................. 19

*Morris Commc'ns, Inc. v. F.C.C.,*
  566 F.3d 184 (D.C. Cir. 2009) ............................................................. 22

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ................................................................................. 14

*New York v. Environmental Protection Agency,*
  964 F.3d 1214 (D.C. Cir. 2020) ............................................... 4, 15, 16

*North Dakota v. U.S. E.P.A.,*
  730 F.3d 750 (8th Cir. 2013) ............................................. 5, 13, 16, 22

*Pavek v. Donald J. Trump for President, Inc.,*
  967 F.3d 905 (8th Cir. 2020) ............................................................... 27

*Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds,*
  530 F.3d 724 (8th Cir. 2008) ............................................................... 13

*Small Refiner Lead Phase-Down Task Force v. U.S.E.P.A.,*
  705 F.2d 506 (D.C. Cir. 1983) ............................................................. 19

*Train v. Natural Resources Defense Council, Inc.,*
  421 U.S. 60 (1975) ................................................................................. 10

*Union Elec. Co. v. E.P.A.,*
  427 U.S. 246 (1976) ................................................................................. 4

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ................................................................................... 13

*Wisconsin v. E.P.A.,*
  938 F.3d 303 (D.C. Cir. 2019) ............................................................... 5

**Statutes**

5 U.S.C. § 705 ............................................................................................. 2

Appellate Case: 23-1719     Page: 5     Date Filed: 04/13/2023 Entry ID: 5265153

42 U.S.C. § 7401(a)(3) ................................................................................ 1

42 U.S.C. § 7410(a)(2)(D)(i) ................................................................... 3, 4

42 U.S.C. § 7410(c)(1) .......................................................................... 17, 23

42 U.S.C. § 7410(k)(1)(B) .......................................................................... 10

42 U.S.C. § 7410(k)(2) ............................................................................... 10

42 U.S.C. § 7410(k)(3) ............................................................................ 4, 17

42 U.S.C. § 7607(d)(9) ............................................................................... 13

Rules

Fed. R. App. P. 27 and 32 ......................................................................... 33

Fed. R. App. P. 32(f) ................................................................................. 33

Federal Rule of Appellate Procedure 18(a)(2) .......................................... 2

**Regulations**

80 Fed. Reg. 65,292 (Oct. 26, 2015) ........................................................... 6

88 Fed. Reg. 9,336 (Feb. 13, 2023) ........................................... 2, 6, 18, 20

88 Fed. Reg. 9336–37 ................................................................................ 21

87 Fed. Reg. 20,036 (Apr. 6, 2022) .................................................. 5, 6, 26

Appellate Case: 23-1719    Page: 6    Date Filed: 04/13/2023 Entry ID: 5265153

## INTRODUCTION

While energy costs are soaring, EPA has jeopardized the ability of the State of Missouri to ensure reliable energy for its 6.2 million residents. The Clean Air Act ("CAA") creates a system of cooperative federalism where EPA promulgates national air quality standards (because air pollution does not stay within state borders), and then States and local governments determine how to meet those standards. This system places "the primary responsibility" for controlling air emissions on States and local governments, not EPA. 42 U.S.C. § 7401(a)(3). Yet EPA has tried to seize that authority to impose onerous, top-down controls on Missouri.

EPA has done so by shifting the goal posts even after the ball has already sailed through. After EPA updated its air quality standards and issued a March 2018 memorandum releasing "air quality modeling data" for States to use, Missouri submitted a State Implementation Plan, a "SIP," using that data demonstrating compliance with those standards. EPA had a nondiscretionary duty to accept within 12 months any plan that complied with the CAA. Instead, EPA disregarded that deadline. It

1

then switched its model, using data obtained *after* that deadline to justify its intent to reject Missouri's SIP based on this post-hoc model.

So Missouri went back to the drawing board and submitted a supplement to its SIP, explaining how Missouri's plan complied with EPA's new model. Not content, EPA switched its model yet again and then informed Missouri that EPA was rejecting the SIP.

EPA's reason became clear almost immediately. Although the CAA gives States "primary" responsibility to control air pollution, if States are unable to exercise this responsibility EPA can implement its own Federal Implementation Plan ("FIP"). EPA does not have to enact a FIP until two years after rejecting Missouri's SIP, yet announced its FIP just one month after fully or partially rejecting Plans from 21 States.

Instead of following the framework established by Congress, EPA disregarded the statutory limits on its authority and denied Missouri its sovereign, statutory right to engage in the cooperative federalism process to regulate emissions. EPA's actions in denying Missouri's SIP are arbitrary, capricious, and in excess of the Agency's authority.

Missouri thus moves under Federal Rule of Appellate Procedure 18(a)(2) and the Administrative Procedure Act, 5 U.S.C. § 705, to stay the

2

portions of EPA's Final Rule disapproving Missouri's SIP to satisfy the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i). Ex. 1, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("Final Rule"). Respondents oppose the motion. In light of EPA's announcement of a FIP for Missouri and the imminent injury that would follow, addressed more fully below, and in light of EPA's actions already with respect to the SIP, it would be impracticable and futile to seek a stay of EPA's order before EPA in the first instance.

## STATEMENT OF THE CASE

## I.    The Clean Air Act and the Interstate Transport System.

### A.    Congress Establishes a System of Cooperative Federalism.

"Air quality regulation under the CAA is an exercise in cooperative federalism." *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 240 (D.C. Cir. 2013). This cooperative federalism recognizes (1) the States' authority to regulate conduct in their own borders as well as (2) the interest the federal government has given that emissions do not stay within borders. The CAA thus "directs the EPA to establish and periodically revise National Ambient Air Quality Standards [("NAAQS")] . . . that set the maximum allowable concentrations for various air

3

pollutants." *New York v. Environmental Protection Agency*, 964 F.3d 1214, 1217 (D.C. Cir. 2020). "Once new air quality standards go into effect, each State must develop [a SIP] to ensure the standards are met within the State's air quality control region." *Id*. The SIP must prohibit emissions that "contribute significantly to" another State's ability to comply with federal air-quality standards. *Id*. at 1217–18; 42 U.S.C. § 7410(a)(2)(D)(i). "Each State is given wide discretion in formulating its plan, and the Act provides that the Administrator '*shall approve*' the proposed plan if it has been adopted after public notice and hearing and if it meets eight specified criteria." *Union Elec. Co. v. E.P.A.*, 427 U.S. 246, 251 (1976) (citing 42 U.S.C. § 7410(k)(3)) (emphasis added).

That States have the "primary" role in this system is well established. As the Supreme Court summarized, "[t]he heart" of the CAA is the State's authority to "formulate, subject to EPA approval, an implementation plan." *Id*. at 249; *see also id*. at 256 ("The [CAA] place[s] the primary responsibility for formulating pollution control strategies on the States."). EPA has only "a secondary role" and has "no authority to question the wisdom of a State's choices of emissions limitations if they are part of a plan which satisfies the standards of [the CAA]." *Train v.*

4

*Natural Resources Defense Council, Inc.*, 421 U.S. 60, 79 (1975); *see also North Dakota v. U.S. E.P.A.*, 730 F.3d 750, 757 (8th Cir. 2013) ("The Act sets forth a basic division of labor: The Federal Government establishes air quality standards, but the States have primary responsibility for attaining those standards within their borders.") (citation omitted). Only if a State fails to submit a sufficient SIP can EPA displace the State's primary authority and introduce a FIP.

## B.     The Interstate Transport System and 2015 Ozone NAAQS.

EPA has developed a four-step process to review SIPs which States may—but are not required to—follow. First, EPA "[i]dentif[ies] downwind receptors[1] that are expected to have problems attaining the NAAQS (nonattainment receptors) or maintaining the NAAQS (maintenance receptors)." 87 Fed. Reg. 20,036, 20,054 (Apr. 6, 2022) (proposed rule) (the "Proposed FIP"). Second, the Agency "determin[es] which upwind states are 'linked' to these identified down-wind receptors based on a numerical contribution threshold." *Id*.   The agency has

---

[1] Receptors are "devices in each State that measure air quality," which EPA relies on to determine which areas are in non-attainment under the CAA. *Wisconsin v. E.P.A.*, 938 F.3d 303, 310 (D.C. Cir. 2019).

Appellate Case: 23-1719     Page: 11     Date Filed: 04/13/2023 Entry ID: 5265153

adopted a nonbinding suggestion that a one-percent contribution to the NAAQS "links" States to downwind receptors. 88 Fed. Reg. 9,342. Third, if any State is "linked to downwind air quality problems[,]" EPA "identif[ies] upwind emissions on a statewide basis that significantly contribute to downwind nonattainment or interfere with downwind maintenance." 87 Fed. Reg. 20,054. Fourth, upwind States "found to have emissions that significantly contribute to nonattainment or interfere with maintenance of the NAAQS in any downwind state," should "implement[] the necessary emissions reductions through enforceable measures." *Id*.

## II.  EPA Rejects Missouri's SIP.

### A.  EPA Issues Guidance and Comments on Missouri's Initial SIP.

EPA triggered the SIP process in October 2015 when it reduced the NAAQS for ozone from 0.075 parts per million to 0.070. 80 Fed. Reg. 65,292 (Oct. 26, 2015). EPA then waited until March 2018 to issue a guidance memorandum identifying the downwind receptors EPA believed were relevant. Ex. 2, Peter Tsirigotis Memorandum (Mar. 27, 2018) (the "March 2018 Guidance"). In the March 2018 Guidance, EPA repeatedly represented that "the purpose of this memorandum is to

6

provide information to states" to "assist states' efforts to develop good neighbor SIPs for the 2015 ozone NAAQS." *Id.*

With this Guidance, EPA provided modeling data that specifically identified six downwind receptors linked to Missouri: two in Texas, two in Michigan, and two in Washington. *See* March 2018 Guidance at A-1– C-7; *see also* Ex. 3, Declaration of Mark Leath, ¶ 7. Missouri relied on this information when it created its SIP. *See Id.*

EPA traditionally considered a state linked to a downwind receptor if the state contributed more than 1% of the 2015 ozone standard (0.7 ppb) to a receptor labeled nonattainment or maintenance. Ex. 10, Memorandum from Peter Tsirigotis, (Aug. 31, 2018) ("August 2018 Guidance"); Leath Decl. at ¶ 6. However, in the August 2018 Guidance, EPA instructed States that "[b]ased on the data and analysis . . . EPA believes that a threshold of 1 ppb may be appropriate for states to use to develop SIP revisions addressing the good neighbor provision for the 2015 ozone NAAQS." *See* August 2018 Guidance at 3. Missouri relied upon this Guidance in crafting its SIP. *See* Leath Decl. at ¶¶ 7, 9, 11.

EPA issued additional guidance in October 2018 for the States to consider in crafting their SIPs. Ex. 11, Memorandum from Peter

Appellate Case: 23-1719     Page: 13     Date Filed: 04/13/2023 Entry ID: 5265153

Tsirigotis, (Oct. 19, 2018) ("October 2018 Guidance"). In the October 2018 Guidance, EPA "identified two potential flexibilities" in its historical four-step SIP review "that [S]tates may use to identify maintenance receptors." *Id*. at 4. Specifically, States "may, in some cases, eliminate a site as a maintenance receptor if the site is currently measuring clean data" and "may, in some cases, use a design value from the base period that is not the maximum design value." *Id*. Missouri also relied upon this guidance in crafting its SIP. *See* Leath Decl. at ¶¶ 7–9.

EPA itself commented on Missouri's SIP during Missouri's public comment period. Ex. 4, Letter from Mark Smith to Darcy Bybee (April 4, 2019). In the April 2019 Letter, EPA identified several of the downwind receptors linked the March 2018 Guidance linked to Missouri and recommended Missouri provide information related to those receptors. *Id*. at 2–3. The comment nowhere suggested Missouri is linked to any downwind receptors not identified in the March 2018 Guidance. *Id*. Missouri's SIP submission addressed each of EPA's comments. *See* Leath Decl. ¶ 12.

8

## B. Missouri's SIP and Supplement.

Missouri submitted its SIP in 2019. Ex. 5. Missouri's SIP expressly relied upon EPA's various Guidance and four-step framework to analyze each receptor the Guidance linked to Missouri. *Id*. at 8–19. Using the data in the March 2018 Guidance, Missouri evaluated the six downwind receptors EPA has identified as potentially "linked" to Missouri based on data suggesting that the State contributed more than the 1 percent threshold. *Id*. at 9. Examining each of the six receptors, Missouri's SIP concluded that the State's contribution to each receptor was either: (1) below the 1 ppb limit EPA's August 2018 Guidance represented as "reasonable and appropriate" for States to use as an alternative to a 1 percent threshold; or (2) did not amount to a "substantial contribution" to the downwind receptor under the potential "alternative methods of identifying" monitors provided by EPA in October 2018 Guidance. *Id*. Consequently, Missouri concluded that, under the "implementation of all on-the-books control measures in Missouri" the State would not "contribute significantly to nonattainment or interfere with maintenance of the 2015 ozone NAAQS in any downwind states." *Id*. at 1, 3–4.

9

## C. EPA Rejects Missouri's SIP and Ignores Missouri's SIP Supplement.

EPA accepted Missouri's SIP as "complete" in November 2019. 42 U.S.C. § 7410(k)(1)(B); Leath Decl. ¶ 13. This triggered a 12-month deadline for EPA to act on Missouri's SIP. § 7410(k)(2). But EPA blew past this deadline, waiting until February 2022 to issue a notice of proposed disapproval. *See* Ex. 6, 87 Fed. Reg. 9533, 9545 (Feb. 22, 2022) ("Proposed Disapproval").

The Proposed Disapproval acknowledges that "[Missouri] relied on the EPA's modeling released with the March 2018 memorandum to identify nonattainment and maintenance receptors" and "to identify which monitors were then linked to emissions from Missouri." *Id.* at 9539. The Proposed Disapproval even acknowledges that Missouri "correctly noted" that the March 2018 Guidance "indicated that the State was linked to six nonattainment and/or maintenance receptors in three downwind states." *Id.* at 9540.

But without any prior notice (either in the 2018 Guidance or EPA's SIP comment) EPA adopted a brand new modeling ("the Version 2 modeling") and concluded that Missouri was "actually" linked instead to four completely different downwind receptors: three new receptors in

10

Wisconsin and one in Illinois. *Id*. at 9543–9544. EPA's only justification for this about-face was an assertion that it relied on more "current and technically appropriate information" obtained *after* EPA's 12-month deadline to approve the SIP. And although EPA had previously stated that the March 2018 Guidance "should assist states in their efforts to develop good neighbor SIPs," Ex. 2 at 2, EPA asserted in 2022 that the March 2018 representations in fact "do not constitute agency guidance with respect to transport obligations." *Id*. at 9536.

In response, Missouri submitted comments identifying several problems with EPA's new methodology and highlighting a number of reasons the Proposed Disapproval was unlawful, arbitrary and capricious. *See* Ex. 7, MDNR Comments on Air Plan Disapproval (Apr. 22, 2022) at 1–16.

In an attempt to comply with EPA's new standard, Missouri provided EPA in November 2022 with a SIP Supplement satisfying EPA's new model. *See* Leath Decl. ¶¶ 19–20; Ex. 8, Missouri State Implementation Plan Revision (Nov. 1, 2022). EPA summarily refused to consider this SIP Supplement in the Final Rule. *See* Final Rule at 9358;

11

Ex. 9, 2015 Ozone NAAQS Interstate Transport SIP Disapprovals, at 309.

EPA's final rule rejecting Missouri's SIP yet again shifted to a new model ("Version 3"). *See* Final Rule at 9358. Now, for the first time, EPA said Missouri was "actually" linked not to the set of original six receptors EPA identified in March 2018, nor to the set of four receptors EPA identified in 2022, but to a novel combination of both sets: one from the original set of receptors and three from the second. *Id.* EPA, although "acknowledg[ing] that the [Agency] reassessed air quality and states' contribution levels" *after* the deadline for SIP submissions, provides no explanation for abandoning its prior representations to the States besides calling the decision "an outcome of the reality" and stating "EPA is following the science." *Id.* at 9364.

At the same time that EPA was switching its modeling, EPA found that Missouri is responsible for a comparatively small amount of emissions. EPA concluded that Missouri's "largest contribution" was 1.87 ppb, much lower than California (35.27), Illinois (19.09), New York (16.10), New Jersey (8.38) and Indiana (10.03). *Id.* at 9353–54.

12

This Court considers four factors in determining whether to grant a stay pending final judgment: (1) likelihood of success on the merits; (2) likelihood of irreparable harm if the stay is not granted; (3) the balance of equities; and (4) whether a stay is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each factor supports a stay of the Final Rule.

## I.  Missouri is Likely to Prevail on the Merits.

To demonstrate it is entitled to a stay, a party must make "a threshold showing that it is likely to prevail on the merits." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). As with other challenges to agency actions, this Court sets aside a final rule issued by EPA "if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *North Dakota*, 730 F.3d at 758 (quoting 42 U.S.C. § 7607(d)(9)). In reviewing agency actions, this Court is "not obligated to stand aside and rubber stamp . . . affirmance of administrative decisions that [this Court] deem[s] inconsistent with a statutory mandate or that frustrate the

13

congressional policy underlying a statute." *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (citation omitted).

### A. EPA Exceeded its Authority and Acted Arbitrarily and Capriciously in Denying Missouri's SIP.

For at least four reasons, EPA exceeded its authority under the CAA and acted arbitrarily and capriciously in denying Missouri's SIP.

**1.** By constantly shifting the goalposts, EPA acted "on factors which Congress has not intended it to consider." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Congress's system of cooperative federalism is clear: EPA sets the standards, and States choose how to comply with them. Here, EPA did not deny Missouri's SIP based on the standards EPA previously announced. Instead, it adopted new standards *after* Missouri submitted its SIP and then retroactively used those standards to deny Missouri's submission. Congress never authorized this kind of ex post facto regulation.

To be sure, EPA adopted this new model in a publication *proposing* to reject Missouri's SIP, but that only makes the problem worse. Setting

14

aside that EPA violated its own statutory, 12-month deadline, EPA did not "give adequate reasons for its decision[]" to shift models and "show that there are good reasons for the new policy." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016) (internal citations and quotation marks omitted) (requiring agencies to take into account reliance interests). Like other States, Missouri relied on EPA's March, August and October 2018 Guidance and on EPA's comment on Missouri's SIP. EPA gave no adequate reason to force Missouri back to the drawing board seven years after EPA triggered the SIP requirement. Indeed, the very fact that EPA had to switch its module *again* to Version 3 suggests EPA had no good reason to switch to Version 2 in the first place. And then, when EPA did switch to Version 3, it again offered no adequate justification.

Courts have declared EPA actions arbitrary and capricious where the Agency's analysis of a state's SIP "at best, was a moving target and, at worst, demanded likely unattainable standards of proof" and where EPA's standards were "impossible to discern because the explanation kept shifting." *New York*, 964 F.3d at 1222. EPA cannot lawfully leave "entirely unexplained how States are supposed to obtain the required

15

detailed and technically particularized internal information from some unknown number of unnamed and unidentified sources." *Id*. at 1224 (emphasis added); *see also Delaware Dept. of Natural Resources v. E.P.A.*, 785 F.3d 1, 15–16 (D.C. Cir. 2015) (agency action unlawful where EPA's "later statements contradicted earlier responses"). EPA's decision to disregard its statutory deadline, disregard its previous representations, and disregard the States' reliance on information EPA explicitly provided to "assist[]" the States is arbitrary and capricious.

To be sure, the CAA does not "place[] EPA under an obligation to provide specific metrics to States before they undertake to fulfill their good neighbor obligations." *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 510 (2014). But declining to provide specific metrics is quite different from providing those metrics, encouraging States to rely on them, and then switching those metrics after States have relied on them.

**2.** In taking these actions, EPA also disregarded its "secondary" role under the CAA. The role of States is not to provide "advice" to EPA. Congress and courts have been clear that "cooperative federalism" here means that "States have primary responsibility." *North Dakota*, 730 F.3d at 757. EPA must accept any sufficient SIP, and only if a State is unable

16

to provide one can EPA impose its own plan. 42 U.S.C. §§ 7410(k)(3), (c)(1). But EPA's actions here appear calculated to displace the States and arrogate for itself the primary role.

Consider first EPA's decision to violate the statutory 12-month deadline. EPA never offered any adequate explanation for this violation of law. Nor could it. The new modeling on which EPA based its decision was performed *after* the 12-month statutory deadline. Violating the 12-month deadline appears to have served no purpose other than to give EPA the opportunity to deny SIPs.

Then consider the timing of EPA's FIP announcement. EPA proposed denying State SIPs on February 22, 2022. Less than three weeks later, EPA proposed a FIP. And then again, just one month after wholly or partially denying SIPs from 21 States, EPA announced it was finalizing a FIP. Nothing required EPA to do so at that time. Indeed, in part to give States time to correct faulty SIPs, EPA is not required to adopt a FIP until two years after denying a SIP. 42 U.S.C. § 7410(c)(1). EPA's rush to roll out a FIP—after delaying action on the SIPs—suggests

17

an improper attempt to arrogate for itself the primary role under the CAA.[2]

EPA's repeated statements in the Final Rule about its desire for a "uniform" national emissions policy reinforce this suggestion. *See* Final Rule at 9337, 9340, 9362, 9380. EPA's actions are less consistent with fairly considering the States' SIPs and more consistent with manufacturing justifications to impose EPA's desires nationwide. This Court need not close its eyes to the obvious effects of EPA's actions. Instead, this Court "must be guided to a degree by common sense." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

**3.** Even if constant model shifting were justified, EPA failed to provide adequate notice of *which* of its constantly-shifting standards it would apply to evaluate Missouri's SIP. Notice provided by an agency "must describe the range of alternatives being considered with reasonable specificity" or else it will be "too general to be adequate."

---

[2] EPA's full or partial denial of *21 different* State SIPs further suggests a pretextual intent to deny the States' SIPs based on EPA's desire to impose a FIP on the States. *See* 88 Fed. Reg. 9,336.

18

*Small Refiner Lead Phase-Down Task Force v. U.S.E.P.A.*, 705 F.2d 506, 549 (D.C. Cir. 1983).

EPA's departure from previous representations on how it reviews State SIPs, without sufficient notice, is arbitrary and capricious. This case is just as bad as, if not worse than, EPA's actions in *Michigan v. E.P.A.*, 213 F.3d 663, 691–92 (D.C. Cir. 2000). There, EPA "depart[ed]" from past representations and "was not explicit about the departure . . . until *two months after the rule was promulgated*." *Id.* at 692 (emphasis added). Here, EPA departed from its original representations and "was not explicit about the departure" until 15 months after EPA's statutory deadline to approve the SIP.

**4.** Even setting aside the constantly-shifting standards, EPA's rigid application of its model on Missouri's SIP is arbitrary and capricious. In a series of guidance memoranda in August and October 2018, EPA provided that it was "reasonable and appropriate for states to use a 1 ppb contribution threshold" and that States may utilize "potential flexibilities . . . to identify maintenance receptors with an appropriate technical demonstration." Ex. 10 at 4; Ex. 11 at 4. Missouri relied on both sets of

19

Agency Guidance in exercising its authority to create its own SIP in compliance with EPA's past Guidance. *See* Leath Decl. at ¶¶ 8–9.

EPA rejected its own August and October 2018 Guidance in its Final Rule, now claiming that past representations by the Agency are "problematic" and brushing aside comments criticizing the administrative bait-and-switch by simply stating the States lacked "legitimate reliance interest[s] sufficient to overcome the countervailing public interest" EPA seems to assert as inherent in its rulemaking. Final Rule at 9373. EPA's reversal of its own guidance in the Final Rule—as with its reversal on its receptor representations—is arbitrary and capricious. *Chemical Mfrs. Ass'n, v. E.P.A.*, 28 F.3d 1259, 1265 (D.C. Cir. 1994).

## B. EPA's Refusal to Consider Missouri's SIP Supplement was Arbitrary and Capricious.

EPA further exacerbated its errors when it refused to even consider Missouri's SIP Supplement. *See* Final Rule at 9358 n. 168. For one thing, EPA did not explain why it could consider Alabama's SIP Supplement but not Missouri's. 88 Fed. Reg. 9337. Remarkably, EPA even pointed to Alabama as a purported justification for ignoring the States' reliance on

20

EPA's past statements, claiming that Alabama's SIP Supplement demonstrates that "the new modeling [has not] prevented states from submitting new SIP submissions based on that modeling." Final Rule at 9364. In fact, Missouri was "prevented" from relying on the new modeling because EPA refused to consider Missouri's SIP Supplement, and EPA *again* switched its modeling after Missouri and Alabama submitted supplements.

Further, EPA delayed its decision on SIPs submitted by Tennessee and Wyoming around the same time Missouri submitted its SIP Supplement. Final Rule at 9337 ("defer[ing] final action at this time"). EPA's only justification for deferring action on these SIPs was the claim that Version 3's modeling "produced a potentially different outcome" for those States. *Id.* at 9367.

In short, EPA's Final Rule—which purports to address SIPs submitted by 23 States under "uniform, nationwide analytical methods, policy judgments, and interpretation"—decides, without any meaningful explanation,[3] to issue a Final Rule disapproving Missouri's SIP while

---

[3] EPA's only explanation for its refusal to consider Missouri's SIP Supplement was that it "cannot legally extend Missouri's deadline to submit a SIP submission." *See* Ex. 9 at 309. This explanation—

simultaneously claiming other States could submit SIP supplements and extending the period to contemplate other States' SIPs. 88 Fed. Reg. 9336–37. It is axiomatic that an agency "abuses its discretion if it fails to provide adequate explanation before it treats similarly situated parties differently.'" *Morris Commc'ns, Inc. v. F.C.C.*, 566 F.3d 184, 188–89 (D.C. Cir. 2009) (internal citation omitted). That is exactly what happened here: EPA treated similarly situated parties differently without any adequate explanation. This disparate treatment is arbitrary and capricious. *Id.*

## II. Missouri will Suffer Irreparable Injury Absent a Stay.

### A. EPA's Final Rule Impermissibly Harms Missouri's Sovereign Interests Under the CAA's Cooperative Federalism Framework.

Under the CAA, Congress carefully crafted a system of cooperative federalism where States have the "primary" right to regulate emissions within their borders. *North Dakota*, 730 F.3d at 757; *EME Homer City Generation, L.P. v. E.P.A.* 696 F.3d 7, 29 (D.C. Cir. 2012); *Dominion Transmission*, 723 F.3d at 240.

---

unsupported by any legal citation—fails to account for EPA's decisions to consider Wisconsin's SIP Supplement or to postpone a final rule on Tennessee or Wyoming's SIPs.

22

That interest is a sovereign interest, and EPA's ongoing attempts to supplant Missouri's authority constitute an irreparable harm to the State. The non-monetary nature of this right renders the harm irreparable, as the State will be without recourse for the harms EPA inflicts to its sovereignty during the review of EPA's unlawful, arbitrary and capricious actions. *See, e.g.*, *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001) (Kansas suffered irreparable harm where a federal agency's decision "places [Kansas'] sovereign interests and public policies at stake"); *Kiowa India Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171–72 (10th Cir. 1998) (interference with a tribe's sovereignty interests is irreparable harm); *Cf. Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2008) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.").

## B. EPA's Final Rule Causes Immediate, Irreparable Harm to Missouri's Energy Grid.

Beyond Missouri's important federalism interests, the Final Rule threatens additional irreparable harm on Missouri and its citizens. EPA's denial of Missouri's SIP establishes a nondiscretionary duty for EPA to impose a FIP on Missouri. 42 U.S.C. § 7410(c)(1). Likely anticipating that

23

its administrative bait-and-switch would be sufficient, as far back as March 2022 EPA provided notice of the FIP it intends to impose on over 20 different states. *See* Proposed FIP at 20036–20216.

Implementation of EPA's Proposed FIP would require energy producers in the State to install costly emission control technologies unnecessary to comply with the requirements of either the CAA or Missouri's SIP. *See* Leath Decl. at ¶¶ 26–28. Some power plants in Missouri—especially those nearing the end of their lifespans—are almost certain to shut down rather than install unnecessary, expensive emissions controls. *Id*. at ¶¶ 29–30. The early closing of any Missouri power plants would make Missouri's energy grid less reliable. *Id*. at ¶¶ 29–31. At least some of the costs imposed on Missouri's power plants by EPA's FIP—either from installation of costly emissions controls or the closing of plants—are highly likely to be passed along to energy consumers in the State. *Id*. at 25. The State, which is one of the biggest customers of the electrical grid, faces serious economic losses that can never be redressed given EPA's sovereign immunity. *Id*. at ¶¶ 32–33.

This Court has recognized that the threatened disruption of a sovereign's electrical services constitutes irreparable harm warranting a

24

stay. *See Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472–73 (8th Cir. 1994) (irreparable harm to a sovereign includes "threat[s] to disrupt electric services"). Additionally, any harms to Missouri stemming from the closure of power plants and a less stable electric grid, to the extent such harms are considered "monetary," are irreparable by virtue of the federal government's sovereign immunity to monetary claims stemming from the harm. *See Iowa Utls. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (finding that the threat of unrecoverable economic loss due to a federal agency's sovereign immunity constitutes irreparable harm); *Baker Elec. Co-op.*, 28 F.3d at 1473.

## III. The Balance of Equities and Public Interest Favor a Stay.

A stay of the Final Rule is additionally warranted because it will preserve the status quo between the parties and protect both the public's interest in maintaining the current emissions control regime and Missouri's federalism rights under the CAA.

The central question this Court considers is whether the balance of equities demonstrates "that justice requires the court to intervene to preserve the status quo until the merits are determined." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630 (8th Cir. 1991) (internal citations omitted). A stay

25

will accomplish this goal. EPA will not be harmed by the stay of a Final Rule issued on a SIP submitted almost four years ago and which explicitly allowed some upwind States additional time for consideration. Final Rule at 9336. On the other hand, Missouri will be significantly harmed if the Court does not preserve the status quo pending appellate review. As detailed above, the denial of a stay will cause irreparable harm to Missouri's sovereign federalism rights and significantly threaten the stability and reliability of the State's power grid. Leath Decl. at ¶¶ 28–34.

It is further in the public's interest for this Court to stay agency actions that are in violation of the CAA and are arbitrary and capricious. This Court has held that public interest "weighs in favor of granting a stay" when "[a] stay would preserve the continuity and stability of [the current] regulatory system" pending judicial review. *Iowa Utilities*, 109 F.3d at 426–27. Under the CAA, EPA has a nondiscretionary duty to implement a FIP upon denying Missouri's SIP and, in fact, has already proposed a FIP to impose on Missouri. 87 Fed. Reg. 20036–20216. It is in the public's interest for this Court to prevent harm to the public from

26

EPA's changes to the emission regulatory system pending review of the Final Rule. *Iowa Utilities*, 109 F.3d at 426–27.

There is also broad public interest in maintaining the system of cooperative federalism that EPA's Final Rule dismissively tramples on. It "is in the public interest to uphold the will of the people" as expressed through the legislature—here, Congress' establishment of a system of cooperative federalism—pending judicial review of EPA's unlawful, arbitrary and capricious actions. *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020). Both the balance of equities and public interest support granting a stay pending judicial review.

## CONCLUSION

For the foregoing reasons, Missouri respectfully moves this Court to stay the Final Rule pending judicial review and a final judgment in this appeal.

Respectfully submitted,

ANDREW T. BAILEY
Attorney General

Joshua M. Divine
Solicitor General

*/s/ Samuel C. Freedlund*
Samuel C. Freedlund
Assistant Attorney General
Office of the Attorney General
815 Olive St.
Suite 200
St. Louis, Missouri 63101
Phone: (314) 340-4869
Fax (573) 751-1774
Samuel.Freedlund@ago.mo.gov

*Attorneys for Petitioner.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I further hereby certify that I caused a true and correct copy of the foregoing to be served on April 13, 2023, by United States first-class mail on the following:

Appellate Case: 23-1719    Page: 34    Date Filed: 04/13/2023 Entry ID: 5265153

Michael S. Regan, Administrator
United States Environmental Protection Agency
Office of the Administrator
Mail Code 1101A
1200 Pennsylvania Avenue NW
Washington, D.C. 20460

Office of General Counsel
United States Environmental Protection Agency
Mail Code 2310A
1200 Pennsylvania Avenue NW
Washington, D.C. 20460

The Honorable Merrick B. Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Todd Kim
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

*/s/ Samuel C. Freedlund*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this motion complies with the

typeface and formatting requirements of Fed. R. App. P. 27 and 32, that

it is written in Century Schoolbook 14-point font, and that it contains

5196 words as determined by the word-county feature of Microsoft Word

Appellate Case: 23-1719     Page: 35     Date Filed: 04/13/2023 Entry ID: 5265153

and excluding those items excluded from length computations under Fed. R. App. P. 32(f). The Motion and this certification have been scanned for viruses and are virus-free.

*/s/ Samuel C. Freedlund*

Appellate Case: 23-1719   Page: 36   Date Filed: 04/13/2023 Entry ID: 5265153