No. 23-1719
IN THE UNITED STATES COURT OF APPEALS

FOR THE EIGHTH CIRCUIT

_____

STATE OF MISSOURI,
*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al.
*Respondents*.

_____

**REPLY IN SUPPORT OF MOTION TO STAY THE FINAL RULE
OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY.**

_____

**ANDREW T. BAILEY**
ATTORNEY GENERAL
Joshua M. Divine, #69875
*Solicitor General*
Samuel C. Freedlund, #73707
*Assistant Attorney General*
*Attorneys for Petitioners*

Office of the Attorney General
815 Olive St.
Suite 200
St. Louis, Missouri 63101
Phone: (314) 340-4869
Fax (573) 751-1774
Samuel.Freedlund@ago.mo.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................i

TABLE OF AUTHORITIES ............................................................. iiii

INTRODUCTION..........................................................................1

ARGUMENT ................................................................................2

I.  Missouri is likely to succeed on the merits. ...............................2

    A. This Court should not consider EPA's post-hoc rationalizations for its arbitrary and capricious rule. ...............2

    B. EPA exceeded its authority, and its disapproval was arbitrary and capricious. ...........................................................4

        i. EPA's disapproval was arbitrary and capricious because it relied on data obtained after EPA's deadline to approve the SIPs. ................................................4

        ii. EPA's disapproval was both arbitrary and capricious and exceeded the agency's statutory authority because it gutted the CAA's cooperative federalism framework. .......7

    C. EPA fails to defend its arbitrary and capricious rejection of Missouri's SIP Supplement. ...........................................9

II.  EPA has failed to refute Missouri's irreparable harms. ................10

    A. EPA does not challenge the Final Rule's irreparable harm to Missouri's sovereign interest.................................................10

    B. EPA misapplies the irreparable harm analysis........................11

III.  EPA has failed to establish any balance of equities or public interest supporting its position. ...............................................13

CONCLUSION ..........................................................................16

Appellate Case: 23-1719    Page: 2    Date Filed: 05/18/2023 Entry ID: 5278409

CERTIFICATE OF SERVICE...................................................................17

CERTIFICATE OF COMPLIANCE......................................................17

ii

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Baker Elec. Co-op., Inc. v. Chaske*,
   28 F.3d 1466 (8th Cir. 1994) ................................................................. 13

*Env't Integrity Project v. EPA*,
   425 F.3d 992 (D.C. Cir. 2005) .............................................................. 5

*Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ............................................................................ 12

*Godinez-Arroyo v. Mukasey*,
   540 F.3d 848 (8th Cir. 2008) ............................................................... 7

*Iowa Utls. Bd. v. FCC*,
   109 F.3d 418 (8th Cir. 1996) ......................................................... 13, 14

*Morris Commc'ns, Inc. v. F.C.C.*,
   566 F.3d 184 (D.C. Cir. 2009) ............................................................. 10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ......................................................................... 3, 9

*Natl. Parks Conservation Ass'n v. McCarthy*,
   816 F.3d 989 (8th Cir. 2016) ............................................................... 6

*Nebraska v. EPA*,
   812 F.3d 662 (8th Cir. 2016) ............................................................... 6

*North Dakota v. U.S. E.P.A.*,
   730 F.3d 750 (8th Cir. 2013) .......................................................... 8, 10

*Prometheus Radio Project*,
   141 S. Ct. 1150 (2021) ...................................................................... 4

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) ...................................................................... 13

*Wallave v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014) ............................................................ 13

Appellate Case: 23-1719    Page: 4    Date Filed: 05/18/2023 Entry ID: 5278409

Statutes

42 U.S.C. § 7410(k)(2) ............................................................. 5

42 U.S.C. § 7607(b)(1) .............................................................. 12

Rules

Fed. R. App. P. 27 and 32 ........................................................ 17

Fed. R. App. P. 32(f) ............................................................... 17

Regulations

87 Fed. Reg. 9540 .................................................................. 3

iv

# INTRODUCTION

Having blown its statutory deadline to act on Missouri's SIP, EPA now claims that a stay would be inappropriate and that EPA's federal takeover must be allowed to proceed "expeditiously." EPA's assertion is not only belied by the record, but the Fifth Circuit already rejected it. Just weeks ago, the Fifth Circuit found many reasons to stay EPA's denials of SIPs submitted by other States.

This Court should do the same. The Fifth Circuit put it best when it determined that "EPA ignored its statutory deadline by a measure of *years*; used that extra time to collect more data, issue novel guidance, and develop new modeling; denied Stay Petitioners' SIPs in part based on that new information; then created FIPs imposing the EPA's policy preferences on the States." *Texas v. E.P.A.*, No. 23-60069, Dkt. 269, at 21 (May 1, 2023 Order) (emphasis in original).

Under the Clean Air Act, Missouri has primary responsibility for regulating emissions within its borders. Rather than respect this mandate, EPA engaged in an unprecedented game of administrative goalpost moving to deprive Missouri of this authority. EPA now says it would have denied Missouri's SIP anyway for other reasons. But courts

1

do not consider conflicting, post-hoc rationalizations designed for litigation. EPA's stated reasons for rejecting Missouri's SIP were arbitrary and capricious for the same reasons the Fifth Circuit found.

EPA has further failed to respond to Missouri's demonstration of irreparable harm, and the bare argument EPA provides in support of its claimed balance of equities in contradicted by this Court's precedent and the Final Rule.

## ARGUMENT

### I. Missouri is likely to succeed on the merits.[1]

#### A. This Court should not consider EPA's post-hoc rationalizations for its arbitrary and capricious rule.

EPA spends considerable time trying to divert this Court away from the reasons EPA stated when disapproving Missouri's SIP. In the Final Rule, EPA makes clear that it evaluated Missouri's submission under "the 2016v3 modeling"—that is, the modeling that did not exist until *after* Missouri submitted its SIP and *after* EPA was statutorily required to rule on the SIP. But now that the Fifth Circuit's stay order has declared that

---

[1] Not content with this Court's leave to file an overlength brief in support of its transfer motion, EPA spends several pages of its opposition further arguing that motion. *See* Opp. at 14–16. These additional arguments should be disregarded. In any event, they fail for the reasons Missouri gave in its opposition to EPA's transfer motion.

2

analysis arbitrary and capricious, EPA spends much of its argument providing *post-hoc* rationales for denying Missouri's SIP. *See, e.g.*, Opp. at 2–3 ("No change in policy or modeling was necessary for EPA to find Missouri's SIP deficient); *id.* at 23 ("Missouri's arguments as to the identification of maintenance receptors would not alter EPA's decision to disapprove the submission.") (emphasis omitted); *id.* at 23 n. 17 (claiming Missouri's SIP is "deficient on its own terms" under iterations of modeling not considered in the Final Rule).[2]

EPA's arguments are not only incorrect,[3] but not properly before this Court. This Court may not accept "counsel's post-hoc rationalization for agency action" and, instead, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself" in the agency action. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). EPA assessed Missouri's submission under the

---

[2] The Fifth Circuit properly disregarded EPA's attempts to raise similar arguments before it. *See, e.g. Texas*, Dkt. 223-1 at 14–15 (EPA's opposition to Louisiana's Motion to Stay).

[3] For example, EPA acknowledged in its proposed disapproval that Missouri "correctly noted" downwind receptors linked to Missouri before EPA departed from its guidance. 87 Fed. Reg. 9540.

3

2016v3 modeling, so the Court must review whether that decision was arbitrary and capricious.

To the extent EPA maintains it would have denied Missouri's SIP under older modeling, that denial would still be arbitrary and capricious. "The APA's arbitrary-and-capricious standard requires that agency action be reasonable *and* reasonably explained." *FCC. v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Even if EPA's ultimate decision were reasonable (it was not), its decision was not "reasonably explained" because it expressly relied on modeling not available to Missouri when Missouri submitted its SIP.

## B. EPA exceeded its authority, and its disapproval was arbitrary and capricious.

As the Fifth Circuit held a few weeks ago, so this Court should hold today: EPA both exceeded its statutory authority and issued a final rule that was arbitrary and capricious.

### i. EPA's disapproval was arbitrary and capricious because it relied on data obtained after EPA's deadline to approve the SIPs.

As the Fifth Circuit recently concluded, there is a "strong likelihood" that EPA acted arbitrarily and capriciously when it "based its

SIP disapprovals in part on policies and modeling data developed *after* the EPA's statutory deadline to act had expired." *Texas*, Dkt. 269 at 19 (emphasis in original). EPA was required to approve or disapprove Missouri's SIP by June 2020. 42 U.S.C. § 7410(k)(2). Instead, EPA "slow-walked for *years* beyond CAA's statutory deadline" so it could change its model based on data released in September 2021, "long *after* the statutory deadline." *Texas*, Dkt. 269 at 19 (emphasis in original). This is exactly the kind of "surprise switcheroo" that EPA admits it cannot lawfully do. Opp. at 26 (citing *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005)).

EPA contends, remarkably, that it "did not change its policies from the 2018 Memoranda." Opp. at 22–23. EPA's own Final Rule says otherwise: EPA "acknowledge[d] that the EPA reassessed" its approach to evaluating "air quality and states' contribution levels" provided in the various 2018 guidance. Final Rule at 9364. The Final Rule expressly states that EPA's decision rests on "the 2016v3 modeling," which was developed long after the 2018 guidance. *Id.* at 9358.

No better is the contention that this Court should excuse EPA's actions because EPA wanted to rely on updated data. Again, the Fifth

Circuit already rejected this argument. By relying on data obtained *after* the statutory deadline, EPA "relied on factors which Congress has not intended it to consider." *Natl. Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 994 (8th Cir. 2016) (citation omitted). In doing so, EPA violated the CAA and failed to "giv[e] due consideration to the reliance the EPA itself had engendered by publishing guidance" intended to assist States. *Texas*, Dkt. 269 at 20.

In an attempt to draw this Court into issuing a decision conflicting with the Fifth Circuit, EPA contends that this Court's decision in *Nebraska v. EPA* is "at odds" with the Texas Order. EPA claims that under Eighth Circuit precedent, unlike Fifth Circuit precedent, EPA's rejection of Missouri's SIP is "entitled to deference." *See* Opp. at 19–20 (citing *Nebraska v. EPA*, 812 F.3d 662, 668 (8th Cir. 2016)). This argument misreads both decisions.

First, *Nebraska* in no way holds that EPA's disapproval decision here is entitled to deference. That decision instead concerned deference only on the highly technical question whether Nebraska's determination of the best available retrofit technology for a power plant included "overestimat[ions]" of emissions baselines. *Nebraska*, 812 F.3d at 668.

6

This is no different from the deference courts routinely give to agencies "[u]nder *Skidmore* deference" for technical analyses that are "persuasive." *Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 850 (8th Cir. 2008) (citation omitted).

Second, the Fifth Circuit *did* give EPA appropriate deference. *Texas*, Dkt. 269 at 18 ("We cannot substitute our own policy judgment for that of the agency.") (quotation marks omitted). It simply did not give deference on the question at issue here: whether EPA unlawfully considered factors outside the statute. *Id.* at 14 (citation omitted).

The Fifth Circuit has correctly concluded that similar SIP denials by EPA are unlawful, arbitrary, and capricious. EPA's attempt to create a circuit split is unpersuasive, and this Court should reject it.

### ii. EPA's disapproval was both arbitrary and capricious and exceeded the agency's statutory authority because it gutted the CAA's cooperative federalism framework.

As the Fifth Circuit also determined, EPA's decision to disapprove SIPs based on data obtained *after* the deadline for EPA to act on SIPs was arbitrary and capricious because it "failed to account for" the "relevant factor[]" of "the CAA's system of cooperative federalism." *Texas*, Dkt. 269 at 21 (internal quotations and citation omitted). The CAA vested

7

in the States the "primary responsibility" for attaining emissions controls within their borders. *North Dakota v. U.S. E.P.A.*, 730 F.3d 750, 757 (8th Cir. 2013). But EPA's actions have demonstrated a determination to unlawfully disregard this structure, with the agency constantly shifting the goalposts to render any purported opportunity to submit a SIP that complies with the CAA a farce.

Again, EPA tries to assert that "[n]othing in the CAA" prevents it from denying SIPs based on data not obtained until *after* EPA's statutory deadline to approve those SIPs. Opp. at 25. But even if reliance on that data were not arbitrary and capricious, it would still exceed the agency's statutory authority by gutting the cooperative-federalism framework. This Court has made clear that States, not EPA, have "primary responsibility" in this area. *North Dakota*, 730 F.3d at 757. If EPA were allowed to reject SIPs based on data not even available to States when they submitted their SIPs, the States would no longer possess the "primary responsibility" under the CAA.

Consider, for example, EPA's euphemistic description of its disapproval of Missouri's SIP. EPA asserts that it determined "that Missouri did not adequately analyze" the linked downwind receptors.

8

Opp. at 20. But it is *impossible* for a State to "adequately analyze" downwind linkages using data not available to the State when it submits its SIP.

This Court should reject EPA's argument that it can do anything not expressly forbidden. No provision gives EPA exclusive authority to regulate Missouri air emissions. In attempting to abrogate the States' key role in the CAA's structure of cooperative federalism, EPA acted "on factors which Congress has not intended it to consider" and which, as used by EPA, would upend the "primary" role of the States. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50. EPA's reliance on these actions to disapprove Missouri's SIP is unlawful.

### C. EPA fails to defend its arbitrary and capricious rejection of Missouri's SIP Supplement.

Separate from its disapproval of Missouri's SIP as initially submitted, EPA was arbitrary and capricious in refusing to consider Missouri's SIP Supplement. Rather than try to justify its failure under the framework of the CAA, EPA simply claims that it "was not required" to consider the SIP Supplement. This claim is refuted by EPA's own past statements.

9

EPA not only considered other state SIP Supplements in the Final Rule, but defended its use of different modeling data in the Final Rule by claiming that Alabama's SIP Supplement demonstrates that "the new modeling [has not] prevented states from submitting new SIP submissions based on that modeling." Final Rule at 9364. And yet when Missouri *did just that*, EPA again moved the goalposts, switching its linkage data *again* and refusing to consider Missouri's SIP Supplement without explanation for the differential treatment. To date, EPA has *still* failed to offer any explanation for these clearly conflicting statements, adopting only a post-hoc rationale contrary to its own Final Rule. *See* Opp. at 26–28. EPA "abuses its discretion if it fails to provide adequate explanation before it treats similarly situated parties differently." *Morris Commc'ns, Inc. v. F.C.C.*, 566 F.3d 184, 188–89 (D.C. Cir. 2009). EPA failed to provide such explanation and has never justified this arbitrary and capricious action.

## II. EPA has failed to refute Missouri's irreparable harms.

### A. EPA does not challenge the Final Rule's irreparable harm to Missouri's sovereign interest.

The CAA is a system of cooperative federalism where States have the "primary" right to regulate emissions within their borders. *North Dakota*, 730 F.3d at 757. That is a sovereign interest, and EPA's ongoing attempts to supplant Missouri's authority constitute an irreparable, non-monetary harm to the State's sovereign interest. *See* Motion to Stay at 22–23.

10

EPA, although acknowledging Missouri's direct sovereign harm, fails to challenge the existence of that irreparable harm in any way besides simply stating that it "premised on the [S]tate's success-on-the-merits argument." *See* Opp. at 29 n.19. Missouri has established its likelihood of success on the merits, and EPA has waived any argument on irreparable harm to Missouri's sovereignty. EPA's failure to dispute irreparable harm to Missouri is dispositive on this element.

## B. EPA misapplies the irreparable harm analysis.

Because EPA has not challenged Missouri's sovereign harm, this Court need address irreparable harm no further. But if this Court decides to, EPA's misapplication of the irreparable harm test fails to refute the existence of unrecoverable monetary irreparable harms.

First, EPA's suggestion (at 28) falls flat when EPA claims that "[t]he Final Rule does not require Movants to do anything and thus itself effects no irreparable harm." EPA's arbitrary and capricious disapproval of Missouri's SIP imposed on EPA a nondiscretionary duty to impose a top-down, Federal Implementation Plan on Missouri, and EPA has already trumpeted the FIP it plans to impose on Missouri absent a stay by this Court. Opp. at 11–12. EPA is effectively claiming that its

11

disapproval of a State's SIP *never* irreparably harms a State and can therefore *never* be stayed pending review. In reviewing challenges to agency actions, this Court "must be guided to a degree by common sense"—here, that EPA will harm Missouri by improperly leveraging a SIP disapproval to impose a FIP. *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).[4]

Implicitly acknowledging this fact, EPA next attempts to suggest that the economic harms Missouri will suffer from EPA's arbitrary and capricious action are not irreparable because EPA believes the increases in energy costs Missouri and its citizens will suffer are a "minimal . . . burden[]." Opp. at 33; *see also id.* at 31. This is incorrect, and Missouri has demonstrated significant economic harms during the judicial review of EPA's action. *See* Motion to Stay at 23–25; Ex. 3 to Motion to Stay ¶¶28–34. But EPA's argument also misapplies the irreparable harm test. *Any* monetary harm suffered by Missouri as a result of EPA's unlawful, arbitrary and capricious actions is *entirely* irreparable due to the federal

---

[4] EPA also claims there is no irreparable harm because EPA's FIP can be challenged at a later date. Opp. at 29. Not only does this argument ignore the harms to Missouri's sovereignty, it also disregards Congress' clear expectation that parties may challenge the denial of a SIP in this Court. *See* 42 U.S.C. § 7607(b)(1).

Appellate Case: 23-1719     Page: 17     Date Filed: 05/18/2023 Entry ID: 5278409

government's sovereign immunity from monetary damages in this area. *See Iowa Utls. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (finding that the threat of unrecoverable economic loss due to a federal agency's sovereign immunity constitutes irreparable harm); *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472–73 (8th Cir. 1994) (irreparable harm where a plaintiff "would be unable to recover any damages . . . in suits requesting monetary damages" due to sovereign immunity). EPA's argument is akin to arguing a party doesn't have standing because a defendant asserts there are not "significant" economic harms—an argument that courts have repeatedly rejected. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (one dollar is enough for standing)*; Wallave v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) (economic harm of "only a few pennies each" was sufficient to establish "a concrete, non-speculative injury."). EPA's attempt to diminish the economic harm it will cause to ratepayers in Missouri as "minimal" does not disprove irreparable harm.

## III. EPA has failed to establish any balance of equities or public interest supporting its position.

After delaying action on Missouri's SIP for years, EPA is now trying to rush through its FIP immediately after denying Missouri's SIP. EPA's

13

passing argument about the balance-of-equities simply restates its success-on-the-merits arguments without meaningfully disputing Missouri's demonstration that a stay will preserve the status quo. *See* Opp. at 34–35; Motion to Stay at 25–27. The Court should stay the SIP denial and maintain the status quo.

This Court has held that the public interest favors a stay when "[a] stay would preserve the continuity and stability of [the current] regulatory system" pending judicial review. *Iowa Utils.*, 109 F.3d at 426–27. A stay here would do exactly that. On the other hand, EPA's disapproval of the SIP would throw out Missouri's entire air regulatory regime and open Missouri up to imposition of a novel regulatory system imposed by EPA during the review of its action.

EPA fails to refute these arguments. Instead, it claims a stay would "delay EPA's efforts" to enact its plan "to lower emissions as expeditiously as practicable." Opp. at 35. EPA's argument essentially complains that a stay would keep Missouri's existing regulatory regime in place pending review of EPA's arbitrary and capricious actions. That is the point of any stay of an agency action pending review in the first place.

14

EPA's action disapproving Missouri's SIP was unlawful, arbitrary and capricious. *See* Motion to Stay at 16–25. EPA will not be harmed by a stay maintaining a State's regulatory status quo that has been in place for years. Absent a stay, Missouri will have its entire emissions regulatory regime thrown out on the basis of an arbitrary and capricious agency decision. The balance of harms could not be clearer.[5]

---

[5] EPA supports its argument by claiming that "Missouri's power plants are among the highest emitters of ozone precursors in the United States." Opp. at 34. Again, EPA's arguments are disproven by its Final Rule. According to the Final Rule Missouri's "largest contribution" was approximately *ten times* lower than various other states. Final Rule at 9353–54.

Appellate Case: 23-1719     Page: 20     Date Filed: 05/18/2023 Entry ID: 5278409

## CONCLUSION

For the foregoing reasons, this Court should grant Missouri's Motion to Stay.

Date: May 18, 2023

Respectfully submitted,

ANDREW T. BAILEY
Attorney General

Joshua M. Divine
Solicitor General

*/s/ Samuel C. Freedlund*
Samuel C. Freedlund
Assistant Attorney General
Office of the Attorney General
815 Olive St.
Suite 200
St. Louis, Missouri 63101
Phone: (314) 340-4869
Fax (573) 751-1774
Samuel.Freedlund@ago.mo.gov

*Attorneys for Petitioner.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit and served the foregoing on all registered counsel through the Court's CM/ECF system.

*/s/ Samuel C. Freedlund*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this motion complies with the typeface and formatting requirements of Fed. R. App. P. 27 and 32, that it is written in Century Schoolbook 14-point font, and that it contains 2999 words as determined by the word-county feature of Microsoft Word and excluding those items excluded from length computations under Fed. R. App. P. 32(f). The Motion and this certification have been scanned for viruses and are virus-free.

*/s/ Samuel C. Freedlund*

17